Okay. Okay. Mr. Piantini. Piantini. Piantini. Thank you, your honor. I plead the court where this is an appeal from a district court interpretation and misapplication of two foreign court orders that were issued out of a court in Venezuela. Putting these orders in context, this is a case filed by La Tele Television, below the plaintiff, which is a Venezuelan corporation in 2012, by its corporate officer, representative, and owner, Fernando Frais. Two years later, in an unrelated case, in litigation in Venezuela, the court appointed a group, an auditing board, to intervene and to oversee certain companies in Venezuela, known as La Junta Interventora, which we've referred to loosely as the Junta. In October of that year, the Junta showed up in Miami, indicating that they were here to oversee or audit the ongoing litigation in the Southern District, but made no attempt to remove Mr. Frais, whom they knew was running that litigation at that time. The conflict that became very apparent was that the Junta was here to advance their pecuniary interest and not what was in the best interest of La Tele, which was to advance a infringement where they were damaged for over $36 million. Mr. P, could I interrupt you for a second, please? I would like you to tell me, we all know that orders in civil law jurisdictions are written very differently than orders or opinions in common law jurisdictions, so I would like you to help me, by telling me as to both of the Venezuelan court orders that are at issue on the translations, which are the pages with the language that you think the district court misunderstood or misapplied. Let's start with the December 20th, 2017 order, which was Exhibit A below. So tell me what pages or what paragraphs, I don't need any discussion, I just want you to highlight the pages and the paragraphs that you think the district court misapplied or misinterpreted. If you could start with the December 20th, 2017 order. Thank you, Judge Jordan. Are you referring to Docket Entry 566-1? Yes. What we've commonly called the clarification order. Well, that clarification order is really very short. The second page of that order sets forth the request for clarification of the Venezuelan court. The last page sets forth the response of the Venezuelan court, where it reiterates the May 2014 orders. In other words, these three orders, the two in May of 2014 and 566-1, have to be read in para materia in order to understand what authority was granted to this junta. So the second page of that order, which is of Docket 566-1, the language that is very important, very critical, and I'm going to take one moment to read it, that I believe was misinterpreted is as follows. After the court recites, the court of Venezuela recites what the authority is and repeats again what they said in May of 2014, the Venezuelan judge says the following. For the court properly considers that outside these ambits, in other words, the list of the court, any action by the intervening board, the junta, shall at all times require the approval of this court, all the more so in order to take part as ancillary to justice in matters being heard outside the territory of the Bolivarian Republic of Venezuela for which it is not authorized. Let me repeat that. For which it is not authorized, so decided. That order did not consider the May 19, 2014 order, did it? The May 19, well, it absolutely does. That's why I said earlier that it needs to be read in para materia, because the May 19, 2014 order amplifies the power to run the day-to-day operation. By way of example, you'll hear the junta stand up now and tell you, we are lethality. We didn't need to intervene under Rule 24 of the Rules of Civil Procedure. We are, in fact, by virtue of the 2014, the May 19 order and the language saying that the board is relieved of their duties. They're relieved of their day-to-day duties, but nowhere does it say that the shareholder is removed. Nowhere does it say that Mr. Fries has lost ownership of the company, which is what the junta maintained. The second paragraph, and this goes back to Judge Jordan's question directly, the second paragraph of 575-4, reading in para materia of these orders, says in response to request by the junta, that it designates the auditing board. That's what these folks are. The auditing board will have, in order to perform their tasks, additional to the broad powers of auditing, administering, organization, and oversight, all of the powers bestowed. Then it reads, it should be emphasized that the president, as well as the members of the board of directors, will be relieved of their responsibilities. Well, if the junta takes the position that this order gives them absolute power, unfettered, and this order by operation of law removes Mr. Fries, then there would have been no need for the junta to attempt to remove Mr. Fries in June of 2014. There would have been no need for the same circuit court that entered the order creating this purported junta to give us a clarification. That order, the order for which Judge Jordan questioned originally, 566-1, would have simply in basic terms said, what part of reiterates the limitations of the power of the junta. That court states specifically in reference on the page before to this case that was in front of Magistrate Judge Goodman by consent of the parties, it cites to this case. It says that all the more so when you're going to go outside of authorization. So that when Judge Dimitriles in the district court... I don't see what in the record would suggest that your client had the authority. What suggests in the record, if you read this clearly and read this for its logical conclusion, the nullification order says it is absolutely nullified the attempt to remove Fries. Logical inference then states that if you can't remove the board, then the board remains as it was before. The nullification order is a 16-page detail order. They call it suspect. It's never been challenged. One would think that parties that have litigated this case to a fairly well 655 docket entries that now lunge that these orders are suspect would have taken some action in Venezuela to go to those courts in these last three years. Can't subject matter be raised at any particular time? At least that's our system of law. I'll ask you a different question. Did the Fries group ever seek to intervene in the lawsuit in the district court, whether an intervention as a right or a permissible intervention? No, your honor. The reason why they didn't... The reason I raised... The reason why they didn't... Bear with me. I'm not asking the why question. I'm just asking the whether question. Because it seems to me that they're not a party to this lawsuit. And the lawyers are not a party to this lawsuit, at least the lawyers who are appealing, you and your colleague, at least according to the district court. And it looks to me like what this whole lawsuit is about is kind of like a derivative action between two parties talking about who controls the company. But the underlying lawsuit here is a copyright infringement case. And if Fries didn't even seek to intervene, how do we have appellate jurisdiction over this matter? Your honor, that's a two-part question. Fries did not seek to intervene because the nullification order maintains him on the board. The Junta, that is an intervening board that came after this lawsuit was initiated, that came with the alleged powers of an order in Venezuela allowing them to interfere is the party that should have intervened. This court now has jurisdiction. Judge Leonard recognized that this was a company in turmoil when she stayed this action, dismissing the DEC action and sending the parties to Venezuela to get this issue resolved. Under Cohen, which we have cited at the time that we filed this litigation, and I want to read directly, rulings not concluding the litigation, but conclusively resolving claims of right separable from and collateral to the rights asserted in the action, give this court jurisdiction. It is critical. These folks, meaning the Junta that came in after the case was involved, that should have intervened and did not, who said now we're here, have now settled this case, albeit without any understanding to us. But the fact is, the reasonable inference is that the board was removed, its corporate representative, 30 days later, the Junta settled it. There's now an order by agreement not to disperse those settlement funds. This is a $36 million claim that got resolved in 30 days. It's not possible that after this claim had survived the motion for summary judgment, had survived the motion to its rightful owner and board. I think I've got it. Thank you very much. Okay, Mr. Mesa. Thank you, sir. Good morning, your honors. May it please the court, Manny Mesa on behalf of La Tele Television. Your honors, the case is before the court today to decide two issues of law. Number one, whether the appellants have standing to bring this appeal. And number two, whether the district court was correct in removing Mr. Piantini and Mr. Katz here as the representatives of La Tele. I'd like to state at the outset, your honors, that La Tele does not support this appeal, did not file the notices of appeal, and actually seeks for the affirmance of the district court's decision because we think it was correct. And I think it's the first point that needs to be underscored is the fact that the Fries faction, number one, does not own the stock in La Tele. Mr. Frye's own interest in companies that own stock in La Tele. So that is just a factual matter. Even if he owned 50% of the stock, would that matter? No, sir, it would not. Who speaks to La Tele? Frye has never sought to intervene. That is correct, your honor. They had an obligation to intervene or at least seek intervention. And then perhaps following orders or rulings on that motion, then they might have standing to appeal. But the fact of the matter is that they do not. If they had sought to intervene, whether as a right or permissibly, and if the district court had said no, they would surely have a right to bring an appeal to this court. They could be on an interlocutory basis. No dispute about that, is there? No, sir. I believe that they could appeal the decision if the court had denied their motion. Let me ask you this. I'm sorry. Go ahead. So the notice of appeal, when the notice of appeal was filed, on whose behalf was it purportedly filed? It was purportedly filed on behalf of La Tele, although... So it was filed by, if we, on its face at least, it appears to have been filed by a party, right? Well... La Tele's a party, right? On its face. And so the district court has determined that your clients actually control La Tele, and Mr. Piotin says, no, my clients do. That's a disputed question. It's completely separate from the merits of the case, and I don't know how we would review it from a final judgment. It seems to me that does satisfy the collateral order doctrine. What am I missing? Well, I think that they don't have standing to bring the... Well, if they are La Tele, then they do, right? If they are. I mean, if they truly are La Tele, then the district court has deprived La Tele of the ability to be represented by the attorneys that it's authorized to be here. If that's true, right? Well, I believe that the district court's findings were that La Tele is controlled by the junta interventor. I understand that. And I think there's a lot of support in the record for that. Yes, sir. But let's assume for the sake of argument for a moment that the district court is wrong about that. How would we review that? Wouldn't that be something that we need to review? And wouldn't this be the proper way to review it? No, sir. I believe respectfully that the proper way would be for the Friese faction to have moved to intervene because the district court... That would mean that they would concede that they're not La Tele. Let's say they really are and that the district court was wrong. Why would they have to do that? Because you can't... I believe respectfully that they can't just disregard the district court's orders. The district court was very clear. They directed the clerk to remove them as the attorneys. And they continued to file documents on behalf of La Tele as if that court order didn't exist. And that's just not the way you're supposed to do it. I think you've got to honor the court order and then seek the appropriate relief, which would be probably a motion to intervene or some other form of petition to invoke the court's jurisdiction. Would a motion to intervene have been the only appropriate remedy they had in order to get appellate review? You would agree at the outset that the determination by the district court that Group A controls La Tele and speaks for it rather than Group B is reviewable by an appellate court. Yes, sir. That question, it can't be decided finally and irrevocably by the district court. That is correct. My question to you is how then does that question come to us? Is the only vehicle by which they can take an appeal by having moved for intervention as of right or permissibly, and their failure to do that denudes us of jurisdiction? Is that your position? Yes, they should have moved to intervene and they did not do so. Shall I stop the clock, sir? It looks like he's frozen. Yes. See if we can get him. Okay, I'll call him. Motion to strike. Oh, here we go. I'm sorry. You froze up for a moment, Mr. Mesa. We stopped the clock while you were frozen. So we'll go ahead. Thank you, sir. This is the moving parties here, Mr. Fries and his attorneys were on notice that they needed to move to intervene because a similar issue came up in a state court case, which is related. In the state court case, in the third district court of appeal, we litigated the exact same issue of who controls la tele. There were two notices of appeal filed. The third district court remanded the case for an evidential hearing to determine who in fact controls la tele. The decision was ultimately that the junta controls la tele. Now the third district court of appeal, what they did is that they treated the notice of appeal, instead of striking it, they treated it as a petition for writ of certiorari. And they entertained the appeal in that fashion. That's what they chose to do. However, in this case, after being placed on notice and after seeing the result in the third district court of appeal, I think at a minimum, the phrase faction had an obligation to do something similar to that, but they have not done it. No authorized representative of la tele has ever filed or authorized the filing of a notice of appeal. And then in the case of JJ Rizzo, which is before the court, which has been relied upon by tele mundo, the police in this case in which we join, JJ Rizzo case, the attorneys repeatedly ignored a disqualification order, which is very similar to what has happened here. They, in this case, they ignored the fact that the, that they were terminated for having a conflict of interest by the client. And then the courts directed them not to continue file pleadings and they continue to do so. Well, let me, let me ask you a question related to what both judge Marcus and chief judge prior asked you a little bit earlier with regards to the need for intervention or something like it. If they had moved to intervene and the district court had granted intervention either as a bright or permissively, that would have been a disaster because they're not trying to assert a claim in support of a issue that affects them differently. They're trying to take over the litigation on behalf of a party that's already there. The intervention would have been completely ineffective because the district court cannot be faced with two dueling entities that are trying to control the litigation of one party. It's just, it would have been left with a mess, right? Well, what happens, what happens if the district court grants the motion to intervene now? What? So they moved to intervene and you take some action on behalf of your client and the side that's been allowed to intervene. The other faction says, no, don't do that. We really want you to do this instead. The court is left with a no win situation. I think respectfully, your honor, that the motion to intervene would be on behalf of Mr. Fries. So there would be a third party added to this litigation. And that third party could then contest whatever, whatever decisions were made by the district court as, as they were affected by it. Of course, the anomaly here is that Fries would not have any power to perfect his copyright suit on his own as a singular party. This copyright action belongs to and involves Letel. That is correct, your honor. And I think that what we have here is we've had a conflict of interest and that's why it's pretty hard for them to even satisfy the rules for you're about to have your time expired. Um, do you want to address, um, the, the evidence that's, let's, let's assume we have you that, that Mr. Pantini's clients have standing. This is properly here, at least under the collateral order doctrine. Do you want to address whether the district court was correct in concluding that your, your clients are the I'll be brief as I know my time has expired. Number one, thank you, sir. There is a court order in Venezuela, which were two court orders that appointed the junta in control of this company. They can only be vacated by the same court or by a higher court that those decisions were appealed four times unsuccessfully, including three appeals to the Supreme court of Venezuela. That's in the record. Number one, number two, the two court orders that are at issue here. One is by a municipal court, which is the equivalent of a County court judge trying to overturn a federal district court. Number one, and that is unrefuted by the expert witnesses that filed up declarations on behalf of both the appellant and the appellee. Let's tell him this becomes essentially a fact question. The district court was entitled to rely on those expert opinions because they're unrebutted. Um, the district court, you would say the district court cannot be reversed. That is correct, your honor. And the second order, um, is not from the same court. Um, however, the, the interesting part is not what's in the order, but what's not in the order yet. No point is any order say that Mr. Fry's has authority to act on behalf of Latina television. And they, frankly, the interpretation that has been, um, submitted to the court by Mr. Pantini is just simply not supported by the plain language of those orders. So we ask that the court affirm the decision of the district court. I yield my time. I believe thank you. Um, Ms. Mello, please the court. My name is Kim Mello and I, along with my co-counsel Brett Berber represent the defendant and athlete Telemundo in this matter after eight and a half years and an award of over $500,000 in sanctions to Telemundo, which today has never been paid. Telemundo wants finality to this litigation as found by the district court and it's well reasoned and thorough order the 2017 and 2018 orders do not give Mr. Fray's or his counsel control of Latale or this litigation. The law and evidence clearly demonstrated that this appeal should either be dismissed, particularly in light of the recent decision and J.J. Rissle or should be affirmed on the merits. And I'd like to start with the J.J. Rissle decision because I do think that there are a number of similarities between this case and the J.J. Rissle decision. And in that case, and of course, Judge Pryor, this was a decision that you offered, but the court held that the notices of appeal were acknowledging because they were filed by lawyers that have been disqualified. Now it's kind of the first way that the court reached. The court then went on in the opinion to find that the defect, I think this was very important and to the court's analysis, the defect couldn't be remedied. And so the appeal was dismissed because of the notice of appeal itself. Well, that which could affect the decree to language here in the event that we were to conclude that the district court was right, that would mean that this notice of appeal too was a nullity and that this appeal should be dismissed, right? Right. And that's our, that is our position is that this appeal under the J.J. Rissle decision should be dismissed. And I think there's some key facts, you know, to look at when you're looking at the similarities between these two cases. In this particular case, Judge Marcus, I'm having a hard time hearing you. Can you hear me, sir? I can now. Yes, just barely. How does this issue come before the court if not now? Are you saying that it's unreviewable what the trial court did here as to who controls Littell? No, I'm not saying that it's unreviewable. How would it be reviewable if not now? The only other it seems to me would have been on a motion to intervene, which was denied. They could have taken that up. But did they have to proceed that way in order to perfect the jurisdiction of this court under the collateral order document? Well, I think under the J.J. Rissle decision, it was dismissed not necessarily because it was unreviewable. It was dismissed because the notice of appeal itself was defective and could not be remedied. And so we're not saying that this is precisely why I was saying there's just limited help from that decision that, as you mentioned, I authored. All that really tells us is what to do if we conclude the district court was right. I think Judge Marcus's question is, is this properly before us? If it wasn't properly brought to us in this way, then how could it have been? So our position would be that at the point the district court entered its order, in which it found that Mr. Mesa, along with the Junta Board, was in control of this litigation, that it was at that point that the Fray's faction essentially became a non-party to the case. But not if the district court's wrong. If the district court's wrong, wouldn't the Fray's faction be entitled to contest that? Absolutely, but I think that they would have to do that. And if you look at this court's decision... They would have to do that how? How would they do that if they didn't do it the way they did it here? How would they do it? I think that the only way that they could do it is... Well, maybe there's two ways. One that I think is quite technical, but the first way would be through intervention. But that would be intervention solely for purposes of appeal. I don't think that if they intervened, that that would necessarily bind them to a finding that they were a non-party. They wouldn't be intervening to contest the district court's ruling that they had essentially been made a non-party to the litigation. So I think there is a distinction there. And that once on appeal, that they could take the position consistent with their position below, which was... I don't understand what would have required them to do that. I mean, if the point of their argument is, we are Latell, we are Latell, the district court's wrong. What would oblige them to move to intervene as if they're not Latell? Well, I think too, if you look back to 2014, I mean, Mr. Piantini and Mr. Cassier were actually, they were terminated as counsel for Latell. I mean, there is a notice of termination that was filed. And it's in the record at... Ms. Mello, all of that goes to whether the district court was right or not, not whether it's proper, not whether the procedural posture here is correct Those are two different things. Right. But the client terminated Mr. Piantini. All right. So the district court was right. That doesn't mean we shouldn't review it here. Right. No, I mean, I do agree that there is a method of review here. It's just our position. And I understand the difficulty and why the court is struggling with this intervention issue. And I wish I had another procedural option to offer. I mean, I think... Okay. Let me ask you this, Ms. Mello. Do you have any other thing that you feel like we need to know on behalf of your client? You're a couple of minutes over. Right. I mean, I could certainly address the merits. I mean, one of the things I did want to point out briefly, there was mention that Mr. Frey's was placed back on the board based on the 2018 order. I mean, that's simply not the case. I mean, if the court goes back and looks at the 2014 order, that's very clear because it says the president as well as the members of the current board of directors will be relieved of their responsibilities. So it was very clear in that 2014 order that the Junta board was being appointed and that the current board was being relieved of its responsibilities. The 2014 orders are also very clear as to broad powers that the Junta board was given, which included control of the power. Ms. Mello, Judge Marcus, do you have any further questions? I do not, sir. Judge Jordy, do you have any? No, thank you. Thank you, Ms. Mello. I think we understand your argument, Mr. Piatin. You've got five minutes for rebuttal. Thank you, Your Honor. In addressing a few points that were raised by both our arguers on behalf of the appellee, I'd like to just bring my attention first to the issue that Judge Marcus and Chief Judge Pryor had actually raised. You know, there's been a lot of talk about- I'm having a little trouble hearing you. You're very- Is that better, Your Honor? Yes. I, okay, I'll speak as loudly as possible. I apologize if I appear to be in the court's face. I'd like to address some of the issues because some of the- I believe some of the things have been turned on their head. The interlopers here are the Junta. Mr. Fraiz, as chairman of the company and owner of the company, which by the way, let me just make it- Would you agree with me that the district court, the determination of who controls Littell is really a determination of a fact and that the district court made a finding of fact that the Junta controls Littell. And so we need to determine whether that- whether the record supports that finding. Isn't that right? No, Your Honor, because the basis upon which the court arrived at the legal conclusion as to who controls, not who owns the company, but who controls this company was as a result of the interpretation of these foreign orders. We believe that it is a completely de novo review. It is not a factual question of- I mean, there are expert opinions in this record, right? About the effect of those orders and how the Venezuelan law works. There is competing testimony, correct. Ultimately, it was the district court's- So ultimately, it ends up as a finding of fact, doesn't it? In that regard, that would be correct. However, the court made its decision on the basis of the clarification order. Remember, Judge Leonard- And the consideration of the expert testimony about all of these orders. From both sides, but that's silent. I don't- there's nothing in the order or in the record that indicates that the court relied on that. As a matter of fact, the only thing that's in Docket Entry 606 is reference and an analysis to both of the subject orders. Our position is that those orders, read in pari materia with the 2014 orders, clearly set out a limited scope of authority that the Junta has. The Junta is the interloper. They are the folks that came into an existing litigation in the Southern District and said, here we are. They should have been required to intervene and did not. Now, the court's analysis as to standing, we agree with. We think that the doctrine- Bear with me. Can you hear me? Okay. Question of standing for a moment. I'm sorry, I could not hear that, Your Honor. Holding aside the question of standing for a moment. Yes, sir. The interpretation of these four orders, May 17, 2014, May 19, 2014, are taken together with the December 17 order and the January 18 order. What these orders mean as to control, is that purely fact-finding, or is that a mixed question of law and fact, as you see it? As I see it, it's a question of law. The interpretation of these orders that answers directly the scope of the Junta's authority should be, and as reflected in the order, of course, to which we agree in appeal, should be considered on those orders itself. Both sides have competing opinions, but nowhere in the order does it appear that the court relied on that. It appears that the court relied on 566-1 and 566-2. We are taking the position, and we are Letele. You got it wrong. You need to look at these orders, read them in powering material, and you will see that- Look, Your Honors, this case, this was a huge asset for this company, $36 million lawsuit. When this Junta was appointed in Venezuela to audit, just look at these orders and what their responsibilities were, those orders are silent about them going into the Southern District and interfering or intervening in this action. The court didn't know about this action until we put it on notice. Judge Marcus, did you get your question answered? Pardon me? No, sir. Okay. Judge Jordan, do you have any other questions? I don't. Thank you very much. I think we understand your case, Mr. Piacin, and that concludes our calendar this morning and our oral arguments for the week, so court is adjourned. Thank you, sir.